UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALEXANDER KURSAR,

    *Plaintiff*,

v.

CHRISTINE WORMUTH,

    *Defendant*.

Civil Action No. 10-1974 (LLA)

## MEMORANDUM OPINION

Plaintiff Alexander Kursar brought this action against the Secretary of the Army alleging that the Army Board for Correction of Military Records ("ABCMR") violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, in denying his request to correct his military record. After two remands, during which Mr. Kursar secured certain relief, the case is back before the court and the parties have filed cross-motions for summary judgment. ECF Nos. 37, 38. After reviewing the parties' motions, the administrative record ("AR"), and the relevant authorities, the court will grant the Secretary's cross-motion for summary judgment, ECF No. 38, and deny Mr. Kursar's motion for summary judgment, ECF No. 37.

### I.    Factual Background

Because this case has a long history, the court will focus on the facts relevant to the ABCMR decision on review. In August 1981, Mr. Kursar enlisted with the United States Army Reserve ("Reserves") for a six-year term. AR 1636. In April 1982, he began a three-year term of active-duty service and began training to become a medical specialist. *Id.* at 1630; ECF No. 29 ¶ 18. By the early summer of 1983, he was in the process of completing the final phase of the

Special Forces Qualification Course at the Institute for Military Assistance, with an expected graduation date of July 26, 1983.  ECF No. 29 ¶ 23".  On July 22, 1983, only a few days before graduation, Mr. Kursar was discharged from active service based on hardship and transferred to the Army Control Group.  AR 1630.  Mr. Kursar contends that he had requested this separation due to a family emergency and that his company commander had informed him that the school Commandant would ensure that he received credit for the course.  *Id.* at 70.

Between 1987 and 1993, Mr. Kursar held positions within the Reserves.  In 1994, he applied for and was appointed as a Warrant Officer in the Washington National Guard as a Special Forces Tech.  *Id.* at 1570.

### A.     Special Forces Tab

In 1994, Mr. Kursar requested a retroactive award of a Special Forces ("SF") Tab from the U.S. Army John F. Kennedy Special Warfare Center and School (the "Special Warfare School").  *Id.* at 1580.  The Commander of the Special Warfare School may award the SF Tab to any individual who successfully completes the Special Forces Qualification Course.  *Id.* at 76.  In support of his request, Mr. Kursar submitted a certificate indicating that he had graduated from the Special Forces Qualification Course on July 26, 1983.  *Id.* at 1580.  The certificate, however, was on a form dated June 1, 1986, and bore the signature of a Commandant who did not hold the position in 1983 (when Mr. Kursar supposedly graduated).  *Id.* at 83.  In October 1994, the Special Warfare School issued Permanent Order 124-1 awarding Mr. Kursar an SF Tab.  *Id.* at 1569.

Then, in November 1995, the Special Warfare School issued Permanent Order 306-59, which revoked both Permanent Order 124-1 and Mr. Kursar's SF Tab.  *Id.* at 1564.  Once the SF Tab was revoked, Mr. Kursar was no longer qualified to serve in any Special Forces role, including the position he was then holding at the Washington National Guard.  *Id.* at 86.  In both August 1997

and April 2004, Mr. Kursar sought reinstatement of his SF Tab and claimed that it had been mistakenly revoked due to administrative error. *Id.* at 70. The ABCMR denied his requests in June 1999 and November 2004, respectively. *Id.*

### B.      Washington National Guard Discharge

In the same month that the Special Warfare School revoked his SF Tab, Mr. Kursar's unit at the Washington National Guard began investigating whether he had misrepresented his military status to attend dive school the previous year. *Id.* at 82-84, 88. His unit eventually concluded that he had lied about his SF status in order to attend dive school. *Id.* at 1385. But on November 14, 1995, before the investigation was completed, Mr. Kursar requested immediate release from the Washington National Guard. While he acknowledged the pending investigation into his conduct, he claimed that he needed to be released because of "conflicts arising with [his] civilian employer over military leave for training and drills." *Id.* at 1380. Two months later, in a letter dated January 11, 1996, he again acknowledged the investigation regarding his attendance at dive school and asked that he be allowed to resign. *Id.* at 1382. In July 1996, Mr. Kursar received a General, Under Honorable Conditions, Discharge from the Washington National Guard and received a NGB Form 22 reflecting the same.[1] *Id.* at 1387-88.

### C.      Reenlistments

Less than a year later, in January 1997, Mr. Kursar reenlisted in the Reserves as a Staff Sergeant. *Id.* at 1550. He presented himself as an honorably discharged, SF-qualified soldier. *Id.* at 86. In August 1997, he was reassigned from the Army Reserve Control Group to the California National Guard. *Id.* at 1360. About a month later, the California National Guard discharged him

---

[1] A "General, Under Honorable Conditions, Discharge" is distinct from an "Honorable Discharge."

from the Guard and Reserves, issuing him an NGB Form 22 with a General, Under Honorable Conditions, Discharge, and a reentry ("RE") code of (3). *Id.* at 1548.[2] The California National Guard Personnel Security Clearance Specialist explained to the California National Guard that Mr. Kursar "was going to be processed for fraudulent enlistment because he held a previous discharge which would have made him ineligible for enlistment." *Id.* at 1442.

Almost three years later, in April 2000, the California Office of the Adjutant General revoked the order discharging Mr. Kursar from the California National Guard and issued a new order again discharging him from the California National Guard with General, Under Honorable Conditions. *Id.* at 1546-47. This new discharge order assigned him to the Army Reserve Control Group, but still carried a RE-code of (3). *Id.*

In July 2000, Mr. Kursar reenlisted in the Reserves. *Id.* at 1536. In January 2003, the Reserves initiated a "flag" on his personnel file for potentially fraudulent enlistment.[3] *Id.* at 87. A few months later, in August 2003, the Army Reserve Personnel Command informed Mr. Kursar of its intent to consider him for separation for fraudulent enlistment, stating that his 2000 enlistment had been fraudulent because his 1997 reenlistment had also been fraudulent. *Id.* at 688. Then, in spring 2004, an Army Reserve Separation Board found that Mr. Kursar's reenlistment was defective and recommended that he receive an Other Than Honorable Discharge.[4] *Id.* In

---

[2] An RE-code of (3) prohibits the individual from future reenlistment. ECF No. 29 ¶ 135.

[3] A flag, or DA Form 268, suspends all favorable personnel actions until it is lifted. AR 54-55.

[4] Unlike a General Discharge, an Other Than Honorable Discharge prevents a former servicemember from accessing specific veterans' benefits. *Applying for Benefits and Your Character of Discharge*, U.S. Dep't of Veterans Affairs (Sept. 18, 2024), https://perma.cc/2XB5-GGPG.

May 2005, Mr. Kursar was discharged with a General Discharge, and the flag on his personnel file was lifted.  *Id.* at 55, 584, 688.

## II.     Procedural History

Between 1997 and 2005, Mr. Kursar submitted multiple applications to the ABCMR challenging the conditions and characterizations of his discharges.  These applications culminated in a May 2006 decision by the ABCMR denying his requests.  ECF No. 29 ¶ 253.  In 2010, Mr. Kursar brought this action challenging the ABCMR's May 2006 decision as arbitrary, capricious, and contrary to law.  ECF No. 1.

In response to consent motions by the parties, the court twice remanded the case to the ABCMR to reconsider its previous decisions.  Minute Order, Mar. 11, 2011; Minute Order, Dec. 21, 2015.  After those remands, the ABCMR issued a final decision (ABCMR Docket No. 20170009082) in October 2020.  AR 41.  In it, the ABCMR concluded that Mr. Kursar had never been entitled to receive the SF Tab because he had never completed the requirements necessary to earn it.  *Id.* at 79.  It also determined that—notwithstanding his initial ineligibility—Mr. Kursar's SF Tab had been properly revoked due to his misconduct, rather than by administrative error.  *Id.* at 80, 83-84.

Back in this court after the second remand, Mr. Kursar filed a second amended complaint, ECF No. 29, and the parties filed cross-motions for summary judgment, ECF Nos. 37, 38.  Mr. Kursar contends that the ABCMR's decision is "arbitrary and capricious and unsupported by substantial evidence" and seeks an order requiring the Army to (1) reinstate his Special Forces Tab; (2) award him certain combat medals, including the Purple Heart and Bronze Star; (3) remove paperwork related to his General Discharge from the California National Guard; (4) replace his discharge paperwork from the Washington National Guard to reflect that his discharge was

"Honorable"; (5) allow him to be considered for promotions with the date of his ranks backdated; and (6) grant him additional retirement points for three separate periods when he was subject to the "Army and ABCMR's wrongful actions." ECF No. 29, at 69-70; ECF No. 37, at 25-42.

After the matter was fully briefed, it was reassigned to the undersigned in December 2023.

### III.     Legal Standard

In APA cases, the usual summary judgment standard under Federal Rule of Civil Procedure 56 does not apply because of the court's "limited role in reviewing the administrative record." *Albino v. United States*, 78 F. Supp. 3d 148, 163 (D.D.C. 2015). Instead, "the function of the district court is to determine whether or not[,] as a matter of law[,] the evidence in the administrative record permitted the agency to make the decision it did." *Id.* (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985)). "Summary judgment thus serves as the mechanism for deciding . . . whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.*

The court may set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard is "highly deferential" and "presumes the agency's action to be valid." *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). In the context of ABCMR decisions, the standard is even more deferential "to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). Accordingly, the court asks only if the ABCMR's "decisionmaking 'process was *deficient*, not whether [its] decision was *correct*.'" *McKinney v. Wormuth*, 5 F.4th 42, 46 (D.C. Cir. 2021) (alteration in original) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508,

1511 (D.C. Cir. 1989)).  That said, "[t]he Secretary's broad discretion in administering the correction of military records does not obviate the APA's requirement that administrative actions be supported by reasoned decisionmaking."  *Code v. McCarthy*, 959 F.3d 406, 415 (D.C. Cir. 2020) (internal quotation marks omitted) (quoting *Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014)).

### IV.   Discussion

The court concludes that the ABCMR's decision was neither arbitrary and capricious nor contrary to law, and it accordingly will grant summary judgment in the Secretary's favor.

#### A.   Threshold Matters

Mr. Kursar raises two procedural arguments concerning the court's review of the ABCMR's decision.  First, he contends that the ABCMR's decision must be supported by substantial evidence.  ECF No. 37, at 21.  The D.C. Circuit has held, however, that the substantial evidence standard applies in adjudications to correct a military record only "if the Board adjudicating the claim has been 'designated as a special board by the Secretary.'"  *McKinney*, 5 F.4th at 46 n.1 (quoting 10 U.S.C. §§ 1558(b)(1)(A) & (B), 1558(f)(3)(B)).  Neither party suggests that the Secretary designated the ABCMR reviewing Mr. Kursar's application as a "special board." *See id.*; *see also Baxley v. Wormuth*, No. 21-CV-2245, 2024 WL 774854, at *4 (D.D.C. Feb. 26, 2024), *appeal filed*, No. 24-5104 (D.C. Cir. Apr. 23, 2024); *Coleman v. Kendall*, No. 22-CV-1822, 2023 WL 4762582, at *11 (D.D.C. July 26, 2023), *appeal filed*, No. 23-5190 (D.C. Cir. Aug. 24, 2023).  Accordingly, the substantial evidence standard does not apply, and the court will review the ABCMR's decision under the above-discussed arbitrary and capricious standard.

Second, Mr. Kursar argues that his unsworn affidavits and record documents enjoy "a presumption of regularity" such that their contents should be "treated as firm evidence by military

7

correction boards." ECF No. 37, at 21. Not so. As the D.C. Circuit has explained, "[t]he presumption of regularity—to the extent it is not rebutted—requires a court to treat the *Government's* record as accurate; it does not compel a determination that the record establishes what it is offered to prove." *Latif v. Obama*, 666 F.3d 746, 750 (D.C. Cir. 2011) (emphasis added). Consistent with this rebuttable presumption, the ABCMR is free to assess the credibility and accuracy of the evidence before it.

### B. Merits

Applying the arbitrary and capricious standard, the court will affirm the ABCMR's decisions on each of Mr. Kursar's requests. The administrative record shows that the ABCMR appropriately considered the relevant evidence before reaching its ultimate conclusions.

#### 1. Claims One and Five: Special Forces Tab and Promotions

Mr. Kursar received his SF Tab retroactively in 1994 after submitting a duplicate copy of a Special Forces Qualification Course certificate. AR 35. The SF Tab was revoked a little more than a year later. *Id.* at 84, 86. Mr. Kursar argues that the revocation was due to an administrative error and that his SF Tab should be reinstated, ECF No. 29 ¶ 441, but the ABCMR disagreed, AR 80.

After reviewing Mr. Kursar's requests and the evidence presented, the ABCMR found that Mr. Kursar "was never entitled to award of the SF Tab, or authorized to serve in SF positions at any point after his discharge from the Regular Army in 1983." *Id.* at 79. In a lengthy discussion, the ABCMR outlined its reasoning for denying Mr. Kursar relief by carefully describing the regulations at issue, Mr. Kursar's service timeline, and the relevant record. *See id.* at 79-90. While Mr. Kursar had been enrolled in the Special Forces Qualification Course, he was discharged from active service prior to completing it. *Id.* at 80. Specifically, when Mr. Kursar was discharged due

to hardship on July 22, 1983, he had yet to finish the field exercise portion of the course, "which is required for SF qualification." *Id.* at 81.  Mr. Kursar's discharge paperwork also did not indicate that he had earned a Special Forces qualification or that he had completed the Special Forces Qualification Course.  *Id.*  Despite the ABCMR's requests, Mr. Kursar was unable to produce a DA Form 1059—the Academic Evaluation Report issued to all soldiers who finish the qualification course.  *Id.* at 80-81.  Finally, medics seeking to become SF-qualified must complete a service tour in an SF-qualified position for twenty-four months immediately after graduating.  *Id.* at 80.  Mr. Kursar did not meet this active service requirement.  *Id.* at 80-81.  Based on this, the ABCMR concluded that he was not discharged as an SF-qualified soldier and that he had fraudulently held himself out as one.  *Id.* at 86.

In support of his request to reinstate the SF Tab, Mr. Kursar submitted an affidavit claiming that, prior to his hardship discharge, his Special Forces Qualification Course company commander "told him that he would receive credit for the course" and that "his name [would] be added to the roster of graduates." *Id.* at 70.  But beyond his self-serving affidavit, the ABCMR was unable to identify any evidence corroborating this assertion.  *Id.* at 82.  Mr. Kursar could not produce an original certificate to verify his graduation from the qualification course, instead submitting a duplicate certificate that he had used to obtain his SF Tab in 1994.  *Id.*  The ABCMR, however, found "indicat[ions] that the graduation certificate was fraudulent" because it "contained several discrepancies."  *Id.* at 82-83.  First, Mr. Kursar's supposed graduation date was July 26, 1983, but the duplicate was on a form dated June 1, 1986.  *Id.* at 83.  Second, the course title did not match the Special Forces Qualification Course that Mr. Kursar had allegedly received credit for.  *Id.*  And third, the name and signature of the Commandant belonged to someone who did not hold the position at the time of Mr. Kursar's claimed graduation.  *Id.*

But even if Mr. Kursar had been entitled to receive the SF Tab, the ABCMR explained that it was "duly revoked" in 1995. *Id.* Based on a "preponderance of the credible evidence," the ABCMR found that the Army had revoked his SF Tab due to his own misconduct. *Id.* Specifically, at some point in 1994, Mr. Kursar misrepresented his military status in order to attend the Combat Diver Qualification Course. *Id.* at 82, 1385. The ABCMR observed that this, "in itself, [was] sufficient cause for revocation of [the] SF Tab." *Id.* at 82.

Overall, the ABCMR concluded that Mr. Kursar had "misrepresented his SF status and was not eligible to enlist as an SF Soldier, . . . as an SF Officer, or as an SF warrant officer" in the first instance. *Id.* at 79. "When the record is viewed in its entirety," it explained, "it appears the applicant presents with a pattern of falsifying documents or otherwise misrepresenting himself to obtain SF positions, course slots[,] and enlistments." *Id.* at 82.

In reviewing whether ABCMR action is arbitrary or capricious, the court asks whether the ABCMR's decision "minimally contain[s] a rational connection between the facts found and the choice made." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (internal quotation marks omitted) (quoting *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995)). Here, the ABCMR more than meets this standard. It provided a detailed finding explaining why it believed that Mr. Kursar's Special Forces qualifications were fraudulent. Mr. Kursar claims that the ABCMR (1) erred in failing to credit his and his former counsel's affidavits, which would have alleviated the ABCMR's concerns regarding his pre-graduation discharge and diploma, ECF No. 37, at 22; (2) failed to accord sufficient weight to his evidence of evaluations, awards, and multiple Special Forces deployments, which corroborated his Special Forces qualifications, *id.* at 23-27; and (3) failed to discuss an Army document approving his purchase of a Yarborough knife, which only SF-qualified servicemembers may purchase, *id.* at 27; *see* AR 72. The record,

10

however, shows that the ABCMR considered all the relevant evidence. *Id.* at 42-43. The ABCMR specifically cited Mr. Kursar's former counsel's affidavit but did not accord it significant weight. *Id.* at 71. It also reviewed but did not give notable weight to the Yarborough knife authorization. *Id.* at 42, 72. As to the certificates and documentation, the ABCMR considered them and deemed them inauthentic. *Id.* at 89. The court understands that Mr. Kursar disagrees with these assessments, but the standard before the court is "not whether [the Board's] decision was *correct*" but rather whether its decision-making "process was *deficient*." *McKinney*, 5 F.4th at 46 (quoting *Kreis*, 866 F.2d at 1511). The court finds no deficiency in the ABCMR's consideration of the evidence before it.

Because the court affirms the ABCMR's finding regarding Mr. Kursar's Special Forces qualifications, it also affirms the denial of his request for promotions (Claim Five), because those promotions required that Mr. Kursar be SF-qualified. *See* AR 89 ("The Board found that the applicant was not qualified to serve in SF positions and is therefore not eligible for promotion.").

### 2. Claim Two: Mr. Kursar's Combat Awards

Mr. Kursar argues that the ABCMR improperly denied him awards of the Purple Heart, the Bronze Star Medal with a "V" device, and the Combat Medical Badge. ECF No. 37, at 28-31. The ABCMR denied the requests because it found "insufficient evidence that [Mr. Kursar] was ever awarded or authorized these awards." AR 89. As the ABCMR explained, "[a]ll awards are published in orders," and there was no credible documentation of any such orders granting Mr. Kursar these awards. *Id.* It also concluded that the evidence Mr. Kursar had produced in support of his claims for awards was "problematic." *Id.* Specifically, the ABCMR doubted the veracity of "certificates provided by the applicant . . . due to [his] history of submitting less-than-authentic documents," and it could not verify that Mr. Kursar's corroborating witnesses were ever

11

in the Army. *Id.* ("The witness statements provided by the applicant are problematic. The analyst of record searched Army personnel databases and there is no record that either individual ever served in the Army.").

Because the ABCMR rationally considered the evidence and explained the connection between its findings and conclusion, its reasoned decision-making complies with the APA. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### 3. Claim Three: California National Guard NGB 22 Form

In one of Mr. Kursar's many applications to the ABCMR (ABCMR Docket No. 20110017356), the ABCMR issued a decision removing the 2003-05 flag for fraudulent enlistment in his file. AR 1179; ECF No. 29 ¶ 258. Following that 2012 decision, an official from the Army Soldier Records Branch stated that the original NGB Form 22, which reflected the flag, would be removed from Mr. Kursar's personnel file. AR 87. However, the document remains in his record, and the ABCMR denied Mr. Kursar's request to remove it in its most recent decision. *Id.*

Mr. Kursar contends that the ABCMR's failure to "correct an injustice" and "remove the old, incorrect, and defamatory" flagging action was arbitrary and capricious. ECF No. 37, at 31-33. But the ABCMR clarified that, "[i]n light of information uncovered and reassessed during this most recent iteration of the applicant's several applications . . . , it appears some of the favorable outcomes previous ABCMR panels afforded"—like the 2012 decision removing Mr. Kursar's personnel flag—"may have been improvidently granted." AR 91. In the ABCMR's view, Mr. Kursar's misrepresentations with respect to his SF Tab and earlier discharges meant that his reenlistments in 1997 and 2000 *were* fraudulent. *Id.* at 87. Specifically, Mr. Kursar did not report to his recruiter that he had received a General Discharge from the Washington National

Guard—a discharge that would have disqualified him from reenlistment in the Army Reserves and California National Guard.  *Id.*  For that reason, "had there remained documents regarding the fraudulent enlistments, the [ABCMR] would [have] be[en] inclined to leave them in [Mr. Kursar's] files."  *Id.*  The ABCMR's decision thus did not perpetuate an existing "error"; it reflected a reasoned reevaluation of Mr. Kursar's military record.  *See id.* at 88 ("All prior favorable actions were decided and recommended on disinformation and incomplete evidence.").[5]  The ABCMR's analysis of all the presented evidence and reassessment of prior decisions was not arbitrary and capricious.

### 4. Claim Four: Discharge from the Washington National Guard

Mr. Kursar argues that his 1996 General Discharge from the Washington National Guard (after he was informed about the investigation into his misrepresentations to attend dive school) should be upgraded to "Honorable" because he was illegally coerced into resigning by his then-civilian employer.  ECF No. 37, at 33.  As supporting evidence, Mr. Kursar produced a letter from the Department of Labor showing that he later won an employment discrimination case against his civilian employer.  AR 85.  But when the ABCMR asked Mr. Kursar to provide the full Department of Labor investigation findings, as well as the Washington National Guard's investigative report into the dive school incident, Mr. Kursar failed to do so.  *Id.*  In the absence of this evidence, the ABCMR reasonably concluded that Mr. Kursar's resignation was voluntary.  *Id.* at 85-86.  There was a clear, rational connection between its factual findings and its final decision.

---

[5] Despite these revelations, the ABCMR did not recommend overturning its prior decisions because it "[was] not inclined to correct an applicant's records in such a way that would make the applicant's situation worse than it was before he made his most recent application to the ABCMR."  AR 91.

### 5. Claim Six: Retirement Points

In his final claim, Mr. Kursar argues that the ABCMR "previously held that [he was] due an additional 35 retirement credit points for each year he missed as a result of erroneous separations." ECF No. 37, at 38. But each of the "gaps"—April to August 2000, January 2003 to May 2005, and from August 2016 through the time of filing—in his retirement credit post-dated his 1996 General Discharge from the Washington National Guard. *Id.* As alluded to above, the ABCMR concluded that these gaps—and Mr. Kursar's consequent failure to earn retirement points—were a direct result of his own misconduct. AR 88. Because Mr. Kursar misrepresented his military status to attend dive school, and because he held himself out as a SF-qualified soldier when he was not, the ABCMR concluded that he was not eligible to attend active-duty training and accrue points during the gaps. *Id.* And, similar to the assessment of Mr. Kursar's personnel flag, the ABCMR noted that its earlier, favorable decisions awarding him retirement credits "were decided and recommended on disinformation and incomplete evidence," but decided not to leave him worse off by revoking them. *Id.* The ABCMR's refusal to award Mr. Kursar additional retirement points was therefore not arbitrary and capricious.

## V. Conclusion

For the foregoing reasons, the court will deny Mr. Kursar's motion for summary judgment, ECF No. 37, and grant the Secretary's motion for summary judgment, ECF No. 38. A separate order will issue.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: September 24, 2024